**IN THE COURT OF APPEALS OF IOWA**

No. 22-2089
Filed April 26, 2023

**IN THE MATTER OF C.B.,**
**Alleged to Be Seriously Mentally Impaired,**

**C.B.,**
     Respondent-Appellant.
_____

     Appeal from the Iowa District Court for Woodbury County, Robert D. Tiefenthaler, Judge.

     C.B. appeals the district court finding he is seriously mentally impaired.

**AFFIRMED.**

     Debra S. De Jong of De Jong Law Firm, P.C., Orange City, for appellant.

     Brenna Bird, Attorney General, and Sarah A. Jennings, Assistant Attorney General, for appellee State.

     Considered by Bower, C.J., and Badding and Buller, JJ.

**BOWER, Chief Judge.**

C.B. appeals an order of noncompliance finding him seriously mentally impaired, challenging the sufficiency of the evidence. We affirm.

"We review challenges to the sufficiency of the evidence in involuntary commitment proceedings for errors at law." *In re B.B.*, 826 N.W.2d 425, 428 (Iowa 2013). "The allegations made [in support of] involuntary commitment must be proven by clear and convincing evidence." *Id.* In other words, "there must be no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence." *Id.* (citation omitted).

To find a person seriously mentally impaired, "that person must first be found to be 'afflicted with a mental illness,' and consequently 'to lack sufficient judgment to make responsible decisions with respect to his or her hospitalization or treatment.'" *Id.* at 432 (citation omitted); *see* Iowa Code § 229.1(21) (Supp. 2022). And, because of their illness, the person must also be found to meet any of the following criteria:

> a. Is likely to physically injure the person's self or others if allowed to remain at liberty without treatment.
> b. Is likely to inflict serious emotional injury on members of the person's family or others who lack reasonable opportunity to avoid contact with the person with mental illness if the person with mental illness is allowed to remain at liberty without treatment.
> c. Is unable to satisfy the person's needs for nourishment, clothing, essential medical care, or shelter so that it is likely that the person will suffer physical injury, physical debilitation, or death.
> d. Has a history of lack of compliance with treatment and any of the following apply:
> > (1) Lack of compliance has been a significant factor in the need for emergency hospitalization.
> > (2) Lack of compliance has resulted in one or more acts causing serious physical injury to the person's self or others or an attempt to physically injure the person's self or others.

Iowa Code § 229.1(21).

On August 26, 2022, C.B.'s mother filed an application alleging serious mental impairment and requesting his hospitalization. The application stated C.B. had auditory hallucinations, outbursts with swearing and sometimes violence, self-isolation behaviors, paranoia, and an inability to maintain his home or pay his bills. She also asserted C.B. had been involuntarily released from school. C.B.'s father provided a supporting affidavit corroborating concerns about C.B.'s paranoia, auditory hallucinations, and the possibility he might hurt himself or others.

Based on the application and supporting affidavit, the court ordered C.B. into medical custody and appointed a physician to examine C.B. The physician diagnosed C.B. with a schizophrenia spectrum disorder and stated C.B. lacked sufficient judgment to make responsible treatment decisions during periods of impairment. The physician determined C.B. was likely to physically injure himself or others and was unable to satisfy his personal needs due to the mental illness. The doctor cited self-harm elements of C.B.'s auditory hallucinations, fluctuating stability, and reliance on family support for housing and finances. The physician found C.B. to be seriously mentally impaired and recommended therapy and a neurological review.

Following a hearing on September 1, the court found C.B. to be seriously mentally impaired and ordered C.B. to participate in outpatient placement for evaluation and treatment. C.B. was ordered "to follow all treatment recommendations . . . including taking any medication recommended by the provider." At his intake evaluation, the treating advanced registered nurse practitioner (ARNP) found C.B. not capable of making responsible treatment

decisions and opined his mental health would continue to decline without proper treatment, including outpatient medication management. The evaluating ARNP suggested injectable medication might be necessary due to C.B.'s lack of insight into treatment.

A periodic report filed November 17 noted C.B. had not started the recommended medications, he was paranoid of others, and his "mental health seems to be deteriorating." C.B. had not held down a job the prior two months and was unable to obtain food or manage his medical needs. The reviewing ARNP considered C.B. seriously mentally impaired and in need of inpatient treatment and injectable medication to improve his prognosis. The report included an observation C.B. had been evaluated by professionals in other fields of medicine who confirmed his diagnosis. The district court ordered C.B. back into custody for treatment. C.B. was picked up, and a noncompliance hearing was scheduled for December 12.

A physician from a different facility evaluated C.B. before the hearing. The doctor found C.B. had a mental illness, would benefit from additional time in the hospital for stabilization and medication, and was not capable of making responsible treatment decisions as shown by his refusing medication. The doctor also stated C.B. had no insight into his illness and posed a danger to himself and others as demonstrated by threats made against his former school. The doctor found C.B. had a history of noncompliance with treatment and noted he refused medications and mental health treatment.

At the noncompliance hearing, the parties accepted the physician's report in lieu of live testimony. C.B., his mother, his father, and a mental health advocate

testified. C.B.'s mother testified about seeing C.B.'s symptoms worsen over the past year and her understanding of a recent incident where police were notified of C.B. making threats against his former school on social media the day before the hearing.[1] She discussed purchasing all his groceries, needing to manage his bills, and C.B.'s recent accrual of multiple driving violations. C.B.'s father mentioned his fear that C.B. does not remember some of his actions after the fact.

When C.B. testified, he opined he had been wrongly diagnosed. He claimed a religious belief that rejected the recommended medications and mental illness in general. He testified using ear plugs muffled the voices he hears, so they must be external. As to caring for himself, C.B. testified he could do his shopping and pay the bills, but his mother later clarified he did not do so. He misses medical appointments despite written reminders from his mother, and only goes to therapy to avoid being committed. C.B. first testified he did not remember posting anything threatening but later admitted "ranting" about his former school and including a photo from a rally following "murders that happened at a[nother] school." He testified he felt the curricular concepts of his former school were attempting to kill him and he wanted to go "say my piece at the school."

The court ruled C.B. remains seriously mentally impaired and ordered he be hospitalized, explaining C.B. would not follow through with any outpatient treatment because he does not believe in mental illness. The court ordered C.B. follow all recommended treatment including medication and authorized the use of injectable medication if medical personnel deemed it necessary.

---

[1] His mother was also told of an ominous message posted by C.B. attached to a school shooting article.

C.B. appeals the court's December ruling, specifically challenging the determination he meets the statutory definition of a seriously mentally impaired person. On appeal, C.B. does not contest his mental illness diagnosis, but he asserts he is able to make rational decisions about his treatment and does not pose a danger to himself or others.

As already noted, part of the criteria for serious mental impairment is that because of mental illness a person "lacks sufficient judgment with respect to the person's hospitalization or treatment." Iowa Code § 229.1(21). C.B. asserts his decision not to medicate was rationally reached—even if medically inadvisable—so the court cannot second guess it. *See In re J.P.*, 574 N.W.2d 340, 343 (Iowa 1998) (finding a decision to not take medication because of concerns about its side effects was reasonable under the circumstances). Claiming an ill-defined religious belief that mental illness does not exist in order to refuse all treatment weighs against a finding C.B. exhibits reasonable and rational judgment in making treatment decisions.[2] This criterion has been met.

Finally, C.B. asserts the evidence is insufficient to establish a recent overt act, attempt, or threat needed to support a finding of dangerousness. *See In re Foster*, 426 N.W.2d 374, 378 (Iowa 1988). The legislature has expanded the definition of dangerousness to self to include the inability to satisfy one's own need for food, clothing, essential medical care or shelter and a history of lack of compliance resulting in hospitalization or causation or attempt at physical injury.

---

[2] When asked what about his religious belief conflicted with medication treatment, C.B. vaguely cited "a spiritual tradition" to support his belief there is no mental illness; rather, he believes he is being attacked by an external force.

C.B. admitted he would not comply with any ordered medication.  Also, while C.B. asserted he could take care of his needs, the testimony from C.B.'s mother established C.B. relies on his mother to get him food, clean his home, pay his bills, and to comply with recommended medical tests and treatments.

In ruling on C.B.'s serious mental impairment, the district court referenced the social media post described in testimony and expressed concern that if C.B. felt threatened by an educational institution, he "may try to inflict harm on somebody else to prevent that from happening."  The doctor's report provided in support of the noncompliance hearing also noted C.B. making threats against his school and implying a school shooting, though it is not clear if the doctor was reporting a new threat or was referring to the threat on social media discussed above.

In light of the evidence supporting multiple potential harm criteria, we conclude the district court did not err in finding C.B. likely to hurt himself or others.  The district court's finding C.B. was seriously mentally impaired is supported by substantial evidence.  We affirm.

**AFFIRMED.**